IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

In the Matter of the Complaint of
VULCAN MATERIALS COMPANY,
as owner of the Tug CHANCE for Exoneration
from or Limitation of Liability.

Civil Action Number 3:04CV909

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Petitioner Vulcan Materials Company's ("Vulcan" or "Petitioner") Motion for Summary Judgment filed on March 4, 2005, and Claimant Terry Buisset's ("Buisset" or "Claimant") Motion for Summary Judgment filed on March 14, 2005. For the reasons outlined below, Petitioner's Motion and Claimant's Motion are DENIED.

## I. BACKGROUND

Claimant was employed as a deckhand on the motor tugboat "CHANCE", which is owned and operated by Petitioner. Cl. Dep. at 21, 36. The access doorway to the engine room on the CHANCE is situated on the aft port corner of the engine space, aft of the wheelhouse. The stairway leading into the engine room consists of six steps painted with red non-skid paint. Larry Gravely Aff. ¶ 9. Claimant contends that there are no handrails, handholds, or other similar features to assist one descending or ascending the stairs. Petitioner contends that a permanent handrail is installed along the top port side of the engine house. Gravely Aff. ¶ 3, Ex. D. Petitioner further asserts that the horizontal surface of the engine house and the brass cold water pipe which runs along side of the engine are both used as handholds. Gravely Aff. ¶¶ 5-6, Ex. F-J.

The CHANCE operates at Vulcan's facility at Curles Neck Hole, a lagoon off the James River. William Fers Dep. at 12. The CHANCE is used to position barges for the loading of sand and gravel from a loader in the lagoon. Fers Dep. at 11-12. Two days a week, Claimant and Captain William G. Fers served as the relief crew for the CHANCE. Cl. Dep. at 29. Captain Philip White and deckhand David Brown worked aboard the CHANCE for the other five days. Cl. Dep. at 29. Claimant and Captain Fers worked aboard Vulcan's tug SCHOOLIE at the Kingsland Reach location three days per week. Cl. Dep. at 29-30.

Larry Gravely was Port Captain at Vulcan's Curles Neck Hole location and Yard Manager at Vulcan's Kingsland Reach location. Gravely Aff. ¶ 1. As Port Captain, Gravely supervised the operations of Vulcan's tugboats and barges, including the work of Captain Fers and Captain White. Gravely Aff. at ¶ 3. As Yard Manager, Gravely supervised the unloading and transportation of material. Gravely Aff. at ¶ 3.

On August 18, 2002, Claimant and Captain Fers arrived for work aboard the CHANCE. Cl. Dep. at 37-39. Once abroad the vessel, Claimant started to descend the stairway into the engine room in order to check the packing gland. Cl. Dep. at 40-41. When Claimant stepped on the second step, he slipped and fell. Cl. Dep. at 40, 48-49. Claimant suffered back injuries and required surgery to repair a damaged disk. Cl. Aff. ¶ 12.  As a result of Claimant's fall, Petitioner paid over $70,000.00 for medical expenses and treatment. Cl. Aff. ¶ 13.

At the time of the injury, the CHANCE was untied from the barge, and idling in Curles Neck Hole. Cl. Dep. at 40, 56. Claimant asserts that the presence of oil on the steps caused him to fall. Cl.

Dep. at 46-47, 56-57, 71-72. Claimant did not see any oil spraying or leaking from the engine.[1] Cl. Dep. at 52. Captain Fers did not see any oil on the steps on the morning of August 18, 2002, nor did he know about any oil leak or other fluid leak aboard the CHANCE during the preceding six months. Fers Dep. at 54-55, 59. Captain White checked the condition of the engine room of the CHANCE the day before Claimant's injury and saw no oil. White Dep. at 16-17. Both the deckhands and the captains were responsible for the routine maintenance of the CHANCE. Cl. Aff. ¶¶ 18-19; Fers Dep. at 13-14.

On June 4, 2004, Claimant filed a Motion for Judgment in Chesterfield County Circuit Court alleging $1,500,000 in damages for negligence, unseaworthiness of the vessel, and claims under general maritime law and the Jones Act. See Terry L. Buisset v. Vulcan Materials Company, Law No. 04-622. On December 8, 2004, Petitioner filed a Complaint in federal court seeking the right to exoneration from or limitation of liability for personal injuries allegedly sustained by Claimant on August 18, 2002. On March 4, 2005, Petitioner filed a Motion for Summary Judgment for Limitation of Liability. Claimant filed a Cross Motion for Summary Judgment Denying Limitation of Liability on March 14, 2005. Oral argument in this matter was heard on April 21, 2005.

## II. STANDARD OF REVIEW

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993); Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).  The

---

[1]The captains would change the oil and the oil filters in the engine room. Captain White would use a bucket, resting on the landing grate, to catch oil that would be dripping during the oil change process. Cl. Aff. ¶¶ 27-28. White Dep. at 17.

Court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. Ballinger v. North Carolina Agr. Extension Serv., 815 F.2d 1001, 1004 (4th Cir.), cert. denied, 484 U.S. 897 (1987). While viewing the facts in such a manner, courts look to the affidavits or other specific facts to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). According to the Fourth Circuit,

> In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues. Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56(c) and (e) . . . . Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes.

Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985) (emphasis in original). Summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In the case at bar, cross-motions for summary judgment have been filed. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotations and citations omitted).

### III. APPLICABLE LEGAL STANDARD

Pursuant to the Limitation of Liability Act ("the Act"), 46 U.S.C. §183 *et seq.*, an owner of a vessel may limit liability for any injury occurring on the vessel if the injury occurs "without the

privity or knowledge of such owner." 46 U.S.C. § 183(a). Under the Act, the shipowner's liability is limited to the value of the owner's interest in the vessel or the vessel's freight then pending. Id. Accordingly, whether a shipowner is entitled to limit liability under 46 U.S.C. § 183 is a two prong test. "First, the court must consider what acts of negligence or conditions of unseaworthiness caused the accident." Empresa Lineas Martimas Argentias, S.A. v. United States, 730 F.2d 153, 155 (4th Cir. 1984). The claimant has the burden of proving negligence or unseaworthiness. Hercules Carriers, Inc. v. Claimant State of Florida, 768 F.2d 1558, 1564 (11th Cir. 1985).

After the claimant meets the burden of proof, the second question a court must address is "whether the shipowner had knowledge of the events which caused the loss. Empresa, 730 F.2d at 155. Actual knowledge is not required. Id. It is sufficient to show that the shipowner should have discovered the events through reasonable diligence. Id.; see also In re the Complaint of Hellenic Lines, Ltd., 813 F.2d 634, 638 (4th Cir. 1987) ("Privity and knowledge...have been construed to indicate that a shipowner knew or should have known that a certain condition existed."). The shipowner bears the burden of proof in asserting the defense of lack of privity and knowledge. Coryell v. Phipps, 317 U.S. 406, 409 (1943).

When the shipowner is a corporation, liability will not be limited under the Act "where the negligence is that of an executive officer, manager, or superintendent, whose scope of authority included supervision over the phase of the business out of which the injury occurred." Empresa, 730 F.2d at 155 (citing Coryell, 317 U.S. at 410-11). Accordingly, "knowledge is adjudged by what the corporation's managing agents knew or should have known with respect to the conditions or actions likely to cause the loss." In re Hellenic, Inc., 252 F.3d 391, 394 (5th Cir. 2001) (citation omitted); see also Craig v. Continental Ins. Co., 141 U.S. 638, 646 (1891) ("When the owner is a corporation,

5

the privity or knowledge must be that of the managing officers of the corporation."); Carr v. PMS Fishing Corp., 191 F.3d 1, 4 (1st Cir. 1999) ("When a corporation owns the vessel, the test is whether culpable participation or neglect of duty can be attributed to an officer, managing agent, supervisor, or other high-level employee of the corporation."). It is the extent of an employee's responsibilities, not his title, that will determine whether limitation of liability is appropriate. Continental Oil v. Bonanza Corp., 706 F.2d 1365, 1377 n. 16 (5th Cir. 1983).

When determining whether an employee is a "managing agent", the court may choose to consider the following non-exhaustive list of factors: (1) the scope of the agent's authority over day-to-day activity in the relevant field of operations; (2) the relative significance of this field of operations to the business of the corporation; (3) the agent's ability to hire and fire other employees; (4) his power to negotiate and enter into contracts on behalf of the company; (5) his authority to set prices; (6) the agent's authority over the payment of the expenses; (7) whether the agent's salary is fixed or contingent; and (8) the duration of his authority (i.e. full-time or restricted to a specific shift). Hellenic, 252 F.3d at 397. The weight and relevance of each factor will depend on the specific facts of the case. Id. at 397 n. 38.

## IV. CLAIMANT'S ALLEGATIONS OF NEGLIGENCE AND UNSEAWORTHINESS

As represented in Claimant's pleadings before this Court, Claimant bases his claim of liability on three grounds: (1) the presence of oil on the stairs of the tug CHANCE; (2) Vulcan's failure to properly instruct, supervise, or train those performing the work and its failure to oversee any regular maintenance of the vessel; and (3) the lack of handrails on the stairs of the tug CHANCE. Grounds One and Two are discussed in Petitioner's Motion for Summary Judgment. Ground Three is addressed in Claimant's Motion for Summary Judgment.

6

## V. PETITIONER'S SUMMARY JUDGMENT MOTION

Petitioner argues that summary judgment for limitation of liability should be granted because it lacked "privity or knowledge" of the events that caused Claimant's injury. For the purposes of this motion, Petitioner stipulates that the alleged oil on the stairway of the tug CHANCE is an act of negligence that contributed to Claimant's injuries.

Petitioner contends that the facts of this case establish that Captain Fers, Captain White, and deckhand Brown lacked the management authority necessary to impute any knowledge on their part to Petitioner under the second prong of the Empresa test. In support of this contention, Petitioner relies on Hellenic, 252 F.3d at 391. In Hellenic, a marine construction company was hired to install a pipeline in Rabbit Island Field in Atchafalaya Bay. Id. at 393. The wind and sea caused the company's "spud barge", the Athena 107, to hit and rupture a natural gas pipeline owned by Bridgeline Gas Distribution, LLC. Id. At the time of the incident, the Athena 107 was unmanned and anchored due to a decision made by the construction superintendent. Id. The marine construction company subsequently filed a Complaint for Exoneration from or Limitation of Liability which was denied by the district court. Id. at 394.

In reversing the district court's ruling, the Fifth Circuit addressed the question of whether the construction superintendent's position in the corporate hierarchy was sufficiently elevated to impute his knowledge to the marine construction company. Id. at 398. The Fifth Circuit considered the construction superintendent's duties on the vessel and determined that: (1) he supervised four vessels and the entire Rabbit Field project; (2) he had no authority to decide when and where the next job would take place; (3) he was not given the power to enter into contracts or to determine pricing; (4) he had no power to fire or hire employees; (5) he had no authority to perform work that appeared to

fall outside the scope of the project; and (6) he could not make basic business decisions for the corporation. Id. The court reasoned that the construction superintendent did not "possess managing authority over the 'field of operations in which the negligence occurred'" because he lacked a "broader authority over business decisions undertaken by the corporation." Id. at 398.

Petitioner states that Captains Fers and White were tugboat captains who only possessed supervisory authority over the deckhands that worked with them and Brown was a deckhand who did not supervise anyone else. Petitioner asserts that none of the men possess supervisory authority over Petitioner's total operations at the Curles Neck and Kingsland Reach locations, or over Petitioner's entire field of operations. Accordingly, Petitioner argues that Captain Fers, Captain White, and Brown do not qualify as "managing agents" whose knowledge can be imputed to Petitioner for purposes of the Act because none of them possessed "managing authority over the field of operations in which the [alleged] negligence occurred." Id.[2]

---

[2] Claimant urges that Petitioner's conclusion that Captain Fers and Captain White did not have managerial authority is incorrect because Petitioner analyzes their "managing authority" using a scope of authority that is too broad. Claimant states that the proper inquiry requires the Court to look at the person's exercise of "supervision over the phase of the business out of which the loss or injury occurred." Coryell, 317 U.S. at 410-11. Claimant asserts that since daily routine maintenance of the tugboats is at issue, the proper inquiry is "Who had supervisory authority over the routine maintenance obligations of the CHANCE, so that their failure would result in oil on the stairs?".

The standard articulated by Claimant to determine Petitioner's privity and knowledge is too narrow and fails to take into account the fact that a corporation is the shipowner in this matter. The standard for charging a corporation with privity and knowledge requires the Court to determine if "the negligence is that of an executive officer, manager, or superintendent, whose scope of authority included supervision over the phase of the business out of which the injury occurred." Empresa, 730 F.2d at 155 (citing Coryell, 317 U.S. at 410-11). This standard is two-fold. First, it requires the Court to take into account the employee's supervisory authority within the corporation over the area in which the negligence occurred. Second, it requires the Court to determine if the employee holds a position of sufficient authority justifying the Court to hold the corporation liable for its employee's knowledge. See Hellenic, 252 F.3d at 395-98 (discussing the applicability of agency principles when determining the privity and knowledge of a corporation

Claimant argues that Captain Fers' and Captain White's significant discretion and authority over the daily maintenance of the tugboats is sufficient to deny limitation of liability. See Hellenic, 252 F.3d at 396 ("Where a corporation grants its agents significant discretion and autonomy, it is reasonable to deny limitation and thereby hold the company liable for the full range of consequences resulting from its decisions."). In support of this proposition, Claimant references the following excerpts from Captain Fers deposition:

> Q: How much discretion do you have as a captain to do things the way you want to do it?
> A: As long as you don't break nothing, you can do what you want.
> Fers Dep. at 51.
>
> Q: Is [painting the steps] something that you're going to make the call for as the captain as to when it's going to be due or when its going to be done?
> A: Pretty much.
>
> Q: It's not somebody from Vulcan that comes out and inspects–
> A: No, no.
>
> Q: – and says, "You need to paint"?
> A: No, it's basically the captain and the deck hand.

Fers Dep. at 34. Claimant contends that both Captains White and Fers had "significant discretion and autonomy" to deny Petitioner limitation of liability.

Next, Petitioner argues that limitation of liability is appropriate because Larry Gravely, the Port Captain at Curles Neck Hole and Yard Manager at Kingsland Reach, lacked knowledge of the events that caused Claimant's injury. In reaching this conclusion, Petitioner contrasts Gravely's knowledge of events in this case with that of three Coast Guard commanding officers in Empresa, 730 F.2d at 153.  In Empresa, the Fourth Circuit examined whether the United States had knowledge

---

seeking limitation of liability). The standard articulated by Claimant overlooks this second concern.

of the cause of a collision between the Coast Guard Cutter Cuyahoga and an Argentinian freighter, Santa Cruz II. Id. at 154. The court determined that the cause of the collision was the medical problems and lack of sleep suffered by Captain Robinson, the captain of the Cuyahoga. Id. at 155. The court denied the United States the right to limit its liability because three officers who had sufficient authority over the operations of the Cuyahoga knew or should have known about the cause of the collision. Id. at 157. The court reasoned that the commanding officer, the executive officer, and the reporting officer, all of whom received daily medical reports which showed Captain Robinson's visits to the medical clinic, failed to take reasonably adequate steps to determine whether his medical condition affected his ability to perform his duties on the Cuyahoga. Id. at 155-57.

Petitioner maintains that the instant case is different from the factual situation in Empresa because unlike the Coast Guard officers who knew of Captain Robinson's medical problems, Gravely did not know, or have reason to know, that oil was present on the stairs of the Tug CHANCE. Petitioner asserts that Gravely had no actual knowledge or prior knowledge of the conditions of the Tug CHANCE because he worked on shore, not on the tugboats.

Petitioner further contends that Gravely had no reason to know that oil would be present on the engine room of the CHANCE. Petitioner states that it is the job of the deckhands to clean the CHANCE, the engine room, and the stairs leading to the engine room. Petitioner notes that it had a longstanding policy and practice to clean up spilled oil on the tugboats and that the engine room stairway was painted with non-skid paint. Accordingly, Petitioner contends that the execution of these policies provided reasonable assurance that oil spills would not create a hazardous situation.

Alternatively, Petitioner argues that even assuming that Gravely had knowledge of the events, he lacked the management authority necessary to impute his knowledge to Petitioner. Petitioner

10

states that Gravely had authority over the loading and unloading of sand and gravel and supervised the work of Captains Fers and White. Petitioner submits that Gravely did not have authority to: (1) negotiate or agree to contracts on behalf of Petitioner; (2) set prices for sale of materials on behalf of Vulcan; (3) decide when or where Petitioner would dig for materials; or (4) decide for what materials Petitioner would dig. Petitioner asserts that even though Gravely possessed authority over the tugboats and barges at Curles Neck Hole and the yard operations at Kingsland Reach, he did not possess the management authority over Petitioner's overall operations at either location. See Hellenic, 252 F.3d 391 (limiting shipowner's liability because field superintendent lacked "broader authority over business decisions undertaken by the corporation" and "managing authority over the field of operations in which the negligence occurred").

Claimant asserts that Petitioner was not only negligent for allowing oil to be on the engine room stairs, but for failing to inspect the tug CHANCE, for failing to properly instruct, supervise, or train those performing the work, for failing to oversee any regular maintenance of the vessel and for failing to install any quality assurance system with respect to maintenance. Claimant asserts that since Petitioner fails to address all of the factual underpinnings of his claim, summary judgment should be denied.

Petitioner maintains that Claimant's injuries were caused by the presence of oil on the stairs, which makes his other allegations of negligence irrelevant to the Court's limitation of liability inquiry. Petitioner argues that even assuming, *arguendo*, that Claimant's additional negligence claims are relevant, Claimant's testimony reveals the existence of Petitioner's daily maintenance

11

policy.[3] Moreover, Petitioner asserts that Gravely has identified that a maintenance policy is in effect at Vulcan. See Gravely Aff. at ¶ 6. ("It is a longstanding policy at Vulcan to clean any spilled oil on the tugboats. This policy was in effect prior to August 18, 2002. Deckhands are assigned the cleaning tasks aboard Vulcan's tugboats.")

Lastly, Claimant argues that Petitioner's motion should be denied as premature at this stage in the proceedings given Claimant's inability to conduct discovery on the issue of the extent of knowledge possessed by Petitioner's supervisory or managerial personnel. Petitioner states that this action has been pending for months in state court and Petitioner identified its right to limit liability as an affirmative defense in its June 28, 2004, Grounds of Defense. Petitioner further states that Claimant has deposed Captain Fers, deckhand David Brown, Captain White, and Ray Stevens.

---

[3]Petitioner relies on the following deposition testimony:
Q: What about on the tug itself; what duties did you have as a deck hand?
A: Cleaning, keeping the boat maintained, changing oil, keeping a check on the engine room.
***
Q: What about cleaning it?
A: You wash it. Keep all the dirt and everything off it, the deck clean and the engine room and all that.
Q: What do you have to do to keep the engine room clean?
A: We usually just scrubbed it down with Tide and water to break the grease up.
Q: How often?
A: After every shift.
***
Q: And tell me how you would go about using it to clean the engine space?
A: Well, on that you would get water in a bucket before you went down, and mix your stuff up and scrub it down and then slosh water back on it and then pump the bilge out.
***
Q: So you have a bucket of water with some detergent in it and you'd you use a brush to scrub–
A: Uh-huh.
Q: – in the engine room. What areas did you scrub?
A: When you do down, you'd scrub your steps and then the deck and when you come back up, you just throw the water down the steps and wash it off. Because you didn't have no running water on that boat.

When determining a claim for limitation of liability, the Court must first "consider what acts of negligence or conditions of unseaworthiness caused the accident." Empresa, 730 F.2d at 155. There are still genuine issues of material fact in dispute regarding the actual cause of Claimant's injury. As stated above, Claimant has alleged three different grounds of his injury. Until the Court has decided which acts of negligence or unseaworthiness caused the accident, it cannot award Petitioner limitation of his liability by simply finding that one of Claimant's grounds is invalid. Moreover, since discovery has not been had on the federal level regarding Petitioner's claim for exoneration and limitation of liability, it would be premature for the Court to grant Petitioner's motion especially since facts about the cause of Claimant's injury are disputed by the parties. See e.g. In re Lewis, 190 F. Supp.2d 885, 887 (M.D. La. 2002) (Rule 56(c) requires "the entry of summary judgment, after adequate time for discovery."). Until the Court makes a determination as to the actual ground of liability, the Court cannot consider the validity of Petitioner's request for limitation of liability. Accordingly, Petitioner's Motion for Summary Judgment is DENIED

## VI. CLAIMANT'S SUMMARY JUDGMENT MOTION

Claimant contends that summary judgment should be granted in his favor due to the unseaworthiness of the tug CHANCE. For a vessel to be seaworthy, it "must be reasonably fit for its intended use" and "fitted out with all the proper equipment." Carr, 191 F.3d at 3 (citations and internal quotation marks omitted). Claimant asserts that a vessel which is unseaworthy due to equipment that is defective at the start of the voyage will prevent the shipowner from limiting liability under the Act. See In re Palmer Johnson Savannah, Inc., 1 F. Supp.2d 1377, 1384 (S.D. Ga. 1997) ("A shipowner may not limit his liability under the limitation act if his ship [is] unseaworthy

13

due to equipment which was defective at the start of the voyage.") (citing <u>Villers Seafood Co. v.</u> <u>Vest</u>, 813 F.2d 339, 343 (11th Cir. 1987).

In the case at bar, Claimant argues that the absence of railings and handrails on the engine stairs aboard the tug CHANCE renders the vessel unseaworthy as a matter of law because it is a clear violation of Occupational Safety and Health Act ("OSHA") regulation 29 C.F.R.§ 1910.24 ("§ 1910.24"). In pertinent part, § 1910.24 states as follows:

> (a) Application of requirements. This section contains specifications for the safe design and construction of fixed general industrial stairs. This classification includes interior and exterior stairs around machinery, tanks and other equipment, and stairs leading to or from floors, platforms, or pits.

> (b) Where fixed stairs are required. Fixed stairs shall be provided for access from one structure level to another where operations necessitate regular travel between levels, ....

> (h) Railings and handrails. Standard railings shall be provided on the open sides of all exposed stairways and stair platforms. Handrails shall be provided on at least one side of closed stairways preferably on the right side descending.

29 C.F.R. § 1910.24. Claimant states that the OSHA regulations are applicable to the CHANCE because it is an uninspected commercial vessel pursuant to 46 U.S.C. § 2101 (40) and 46 U.S.C. § 3301. <u>See</u> <u>Chao v. Mallard Bay Drilling, Inc.</u>, 534 U.S. 235, 243 (2002) (noting that OSHA has jurisdiction over uninspected vessels and that the Coast Guard's regulatory authority in this area is limited).

Petitioner submits that the CHANCE was not required to have handrails or railings on the stairs leading to the engine room because § 1910.24 does not apply to vessels.[4] Petitioner contends the Claimant's theory that § 1910.24 is applicable in this case is contradicted by OSHA's

---

[4]Petitioner does not dispute that OSHA has jurisdiction over uninspected vessels.

interpretation of the regulation. See 55 Fed. Reg. 13,371 (1990); see also Mauler v. F/V Centaurus,

No. C90-5467Z, 1992 WL 510215, at *3 (W.D. Wash Dec. 17, 1992) (finding that although OSHA

had jurisdiction to regulate fixed industrial stairs, § 1910.24 did not apply to "ship's ladders" based

on OSHA's interpretation of its regulations).

Claimant states the Petitioner's violation of OSHA's handrail regulation constitutes

unseaworthiness as a matter of law. In reaching this conclusion, Claimant makes the following

discourse: (1) failure to put railings or handrails aboard the CHANCE is a clear violation of OSHA;

(2) this OSHA violation constitutes negligence *per se*;[5] (3) the negligence goes directly to

---

[5]In asserting that an OSHA violation constitutes negligence *per se*, Claimant relies on the
Jones Act, 46 U.S.C. § 688. Claimant contends that courts have found that a clear regulatory
violation constitutes both negligence *per se* and unseaworthiness. Cook v. Ancich, 119 F.
Supp.2d 1118, 1120 (W.D. Wa. 2000) (noting that "under FELA, there is negligence *per se* if the
statutory violation 'contributes in fact to the death or injury in suit, without regard to whether the
injury flowing from the breach was the injury the statute sought to prevent" and that the entire
body of FELA, including its standards of liability, was imported into the Jones Act) (quoting
Kernan v. Am. Dredging Co., 355 U.S. 426, 433 (1958)).

Petitioner argues that even if OSHA applies to the stairs on the CHANCE, it only
constitutes some evidence of the standard of care, not negligence *per se* or unseaworthiness.
Petitioner suggests that Claimant's argument that a violation of an OSHA regulation constitutes
negligence *per se* or unseaworthiness is contrary to Fourth Circuit precedent. In a negligence
action under FELA, the Fourth Circuit found that OSHA regulations "provide evidence of the
standard of care exacted of employers, but they neither create an implied cause of action nor
establish negligence *per se*." Albrecht v. Baltimore and Ohio R.R. Co., 808 F.2d 329, 332 (4th
Cir. 1987) (quoting Melerine v. Avondale Shipyards, Inc., 659 F.2d 706, 707 (5th Cir. 1981));
Robertson v. Burlington N. R.R. Co., 32 F.3d 408, 410 (9th Cir. 1994) (noting split in circuits
regarding whether an OSHA violation constitutes negligence *per se*, but adopting the Fourth
Circuit and Third Circuit rule). The court in Albrecht reasoned that the rule was consistent with
29 U.S.C. § 653(b)(4) which provides that OSHA shall not be "construed to supersede, diminish
or affect the common law or statutory duties or liabilities of employers with respect to injuries of
their employees." Albrecht,  808 F.2d at 332-33.

Claimant also argues that under Virginia tort law, the requirements for finding negligence
*per se* based upon a statutory violation will easily be found. Claimant's analysis under Virginia
law is erroneous because state law does not provide the standard of liability under the Jones Act.
See Schoenbaum, Thomas, J., Admiralty and Maritime Law, 4-3, pp. 169-70 (4th ed. 2004)
(discussion preemption of state law by admiralty law); Yamaha Motor Corp., S.A. v. Calhoun,

Petitioner's failure to equip the CHANCE; (4) the CHANCE is unseaworthy because it was not properly equipped; and (5) the shipowner cannot limit his liability because the ship was unseaworthy before the start of the voyage and the shipowner is deemed to have constructive notice of the unseaworthy condition of the vessel.

Claimant states that the pictures of the CHANCE clearly show that the vessel is in violation of OSHA because no railings are present on the engine room stairs. Though not explicitly stated by Claimant, he appears to be arguing that this violation constitutes negligence *per se* under the Jones Act because Petitioner's alleged violation of the OSHA regulation contributed to Claimant's injury. Claimant concludes that under the Jones Act, Petitioner's violation of the OSHA regulation requiring handrails on stairs renders the CHANCE unseaworthy and thus prohibits Petitioner from limiting its liability under the Act.

Petitioner argues that even if OSHA's fixed industrial stair regulation constitutes some evidence of the standard of care, facts are in dispute which preclude summary judgment. Under the first prong of the test for determining whether to limit a shipowner's liability under § 183(a) the Court must determine what unseaworthiness *caused* the accident. See Empresa, 730 F.2d at 155 (emphasis added). Petitioner contends that Claimant does not explain how the alleged lack of handrails caused his injury. See Gosnell v. Sea-Land Service, Inc., 782 F.2d 464, 467 (4th Cir. 1986) ("[T]o prove a claim of unseaworthiness, a plaintiff must show that the unseaworthy condition of the vessel was the proximate or direct and substantial cause of the seaman's injuries.")

Petitioner contends that Claimant's injuries were caused solely by his own negligence in losing his footing. Petitioner asserts that there is evidence in the record which shows that the injury

516 U.S. 199, 215 (1996).

would not have occurred if he had not lost his footing and slipped. Moreover, there is evidence in the record that a handrail and handholds were available for Claimant to use in descending the stairs. Accordingly, Petitioner states that the lack of handrails cannot be shown to be the proximate cause of the alleged accident for the purposes of summary judgment. See In re Hellenic Lines, Ltd., 813 F.2d at 639 ("Only conditions of unseaworthiness that contribute to the [injury] are relevant to determining whether the shipowner is entitled to limitation.").

Even if the OSHA handrail regulation does apply to the CHANCE, there are genuine issues of material fact in dispute as to whether handrails are present on the stairway of the CHANCE. Petitioner has presented pictures showing that a handrail is present on the entryway to the engine room and other handholds are present to assist people descending the engine room stairs. Since a reasonable jury could find for Petitioner, the non-moving party, Summary Judgment is DENIED.

## VII. CONCLUSION

For the reasons outlined above, Petitioner's Motion for Summary Judgment is DENIED, and Claimant's Motion for Summary Judgment is DENIED.


     /s/ James R. Spencer
UNITED STATES DISTRICT JUDGE


 MAY 10, 2005
DATE

17