**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

In the Matter of the Complaint of )
                              )        **Civil Action No. 3:04CV909**
VULCAN MATERIALS CO., )

## <u>MEMORANDUM OPINION</u>

This matter is before the court for final resolution, the parties' cross motions for summary judgment and Petitioner's renewed motion for summary judgment having been denied pending trial proceedings that have now been held to resolve what the court found in denying the motions to be genuine issues of disputed material fact. The parties submitted proposed findings of fact and conclusions of law in advance of the trial proceedings and the parties have submitted post-trial memoranda, in addition to oral argument at trial, that the court has reviewed. The matter is therefore ready for resolution.

The instant matter is an action by the Petitioner in admiralty seeking exoneration from or limitation of liability for injuries and related damages sustained by the Claimant, Terry Buisset (Buisset or Claimant), in a shipboard incident for which he has sought $1.5 million dollars in damages from the Petitioner employer in a state court action based on alleged negligence, unseaworthiness of the vessel involved, and claims under general maritime law.[1] The Petitioner, Vulcan Materials Company (Vulcan), as owner of the vessel on which the incident occurred (the CHANCE), seeks a finding by the court "exonerating" it from liability for the damages Buisset

_____

[1]The state court action has been stayed/enjoined pending the resolution of this case which the petitioning employer is pursuing to determine its potential liability, if any. 46 U.S.C. §§ 181 *et seq*. and Supp'l Rule F, Fed. R. Civ. P.

allegedly incurred on the basis that the CHANCE was not unseaworthy, or Vulcan otherwise negligent, so as to proximately cause the damages sustained.  In the alternative, if determined to be liable, Vulcan urges the court to "limit"  any award of damages as permitted by law to the value of the vessel because of Vulcan's lack of "privity or knowledge" of the acts or omissions that caused the injury.  (Vulcan Materials Company's Propos'd Findings Fact & Concl. Law (Vulcan's Propos'd Findings) at 1-2).

## Facts

The court finds the following relevant facts based on the undisputed findings proposed by each party and the court's evaluation of the evidence presented at trial:

1.  Buisset had been employed as a deckhand on board a boat (vessel) since 1996 and had worked for Vulcan in that capacity since 2000.

2.  At the time of the subject incident on August 18, 2002, Buisset had been working two days a week (Sunday and Monday) on the CHANCE, a thirty-four foot long, single screw motor tugboat that had been built in 1957.

3.  The crew of the CHANCE on that date consisted of the Captain William G. Fers (Fers) and Buisset.

4.  The CHANCE had an engine room below a single deck that was entered through an access doorway down a set of six diamond triad steel plate steps.

5.  The stairs had been painted at some point with red paint containing sand granules that were intended to improve traction.

6.  The stair tread and the paint on it had become worn with use as of the date of the incident, but the extent of the wear such as a friction co-efficiency value or other reliable measure is unknown.

7.  The unified set of metal steps were positioned at an angle of approximately fifty-five degrees from horizontal and the individual treads inclined downward from the front of the tread to the rear at an angle of approximately fifteen degrees.

8.  The set of steps did not have a handrail running its full length.  There were,

however, objects that one could hold onto or grab (handholds), including the top of the access doorway that one could hold onto while going down the first several steps and a pipe that ran horizontal to the floor and adjacent to the engine block at a height that could be reached by one on the last several steps.

9.    Buisset had traversed the steps hundreds of times before August 18, 2002, without incident, and there is no evidence of anyone having ever slipped or fallen on the steps.

10.   Photographic evidence that was introduced and related testimony depicts a confined area in a ship's hold for which movement is restricted, if not difficult, especially for a large individual.

11.   Buisset, who is approximately six feet tall and weighed in excess of 300 pounds at the time, testified in deposition and at trial that he slipped when he placed his right foot on the second step from the top as he was descending into the engine room to perform a routine inspection activity of the engine.

12.   The CHANCE was in an idling mode at the time with little if any motion other than slight movement with the current, and the weather and water conditions were clear, dry, and calm.

13.   Buisset testified that he slid down the remaining steps as he fell and landed on his buttocks, experiencing pain in his back and right leg areas.

14.   Fers was in the wheelhouse and did not hear Buisset call out for assistance as Buisset testified he had; rather, Fers found Buisset standing on the deck after he had gotten up from the fall and had climbed up the steps.

15.   Buisset first told Fers, as well as a company representative (Larry Gravely) and a marine surveyor who was summoned to investigate the matter (D. H. Austin), that he had slipped on a piece of cardboard that had been placed on top of the platform at the bottom of the steps.

16.   Buisset subsequently stated in deposition and at trial that he had slipped on some oil that was on the steps.

17.   Buisset also stated that he did not see any evidence of oil on the steps after his fall, and Fers did not see any foreign substance on the steps either before the incident when he went into the engine room to prepare for operation, or after the incident.

18.   Buisset maintained that he got oil on his clothing (right trouser leg, buttocks area,

and boots) as a result of the fall, but Fers did not observe any on him, nor did Gravely or Austin who interviewed Buisset soon after the incident while Buisset was wearing the same clothing and footwear.

19.     Austin, who inspected the area of the vessel where the incident occurred soon after it happened, did not observe any foreign substance on the steps and concluded that the tread and paint were in good condition.

20.     Buisset told attending medical personnel something to the effect that he had slipped and fallen, but not on oil.[2]

21.     Another captain of the CHANCE, Captain Philip White, had checked the condition of the engine room the night before the incident at the conclusion of the shift preceding the incident and he did not observe any substance on the steps.

22.     Vulcan's tugboat captains, including Fers and White, only had supervisory authority over the sole deckhand that worked with them and general maintenance responsibility for the vessel.  They did not have authority beyond that point sufficient to obligate Vulcan on any corporate matter, including safety issues.

23.     Gravely, as Port Captain, directed the operations of the tugboats, including the CHANCE, but he did not have authority regarding overall operations, including safety issues; rather, only the Area Distribution and Marine Manager (Martin Thorpe), two supervisory levels above Gravely, had such authority and there is no evidence that Gravely was aware of any unsafe condition involving the CHANCE, that he reported any concerns to those above, or that Thorpe was otherwise aware of any safety issue(s) involving the CHANCE.

24.     Buisset was diagnosed as having suffered from a lumbar sprain as a result of the

---

[2]The statements attributed to Buisset by treating medical personnel are properly admissible as an exception to the Hearsay Rule (FRE 803(4) (statements in conjunction with medical diagnoses)). Objection to the admissibility of such evidence is therefore overruled, proper foundation having been established. In any event, such statements are of marginal value and not determinative of the court's finding that the Claimant has failed to establish that he, in fact, slipped on oil.   Likewise, the court places no significance on the Petitioner's efforts to impeach Buisset's credibility by offering evidence that he was seen at a sporting event (turkey shoot) without needing a walking cane, or that he was motivated to testify falsely against the Petitioner's interests because his father, who had also been employed by Vulcan, had just been "laid off" shortly before the incident.  The Claimant has simply been unable to carry his burden of proof given his own inconsistent statements regarding the issue, the lack of any meaningful corroborative evidence, and the existence of consistent, conflicting evidence by testimony and photograph.

incident, but he also suffered from a pre-existing condition in the same area of his spine that was discovered upon surgery relatively soon after the incident to have been existing for so long that disc material had calcified.

## Analysis

It is clear that a shipowner has the duty "to furnish a vessel and appurtenances reasonably fit for their intended use."  Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550 (1960).  However, even if it is established that a condition, or combination of conditions, rendered a vessel unseaworthy because it was "[un]fit for its intended use," the condition(s) must be shown to have proximately caused the subject injury.  *See* Gosnell v. Sea-Land Service, Inc.,782 F.2d 464, 467 (4th Cir. 1986) ("to prove a claim of unseaworthiness, a plaintiff must show that the unseaworthy condition of the vessel was the proximate or direct and substantial cause of the [loss]").  Here, the Claimant asserts that the CHANCE was unseaworthy by virtue of oil having been negligently spilled or otherwise placed and left on the steps, combined with the pitch of the steps (greater than fifty degrees to horizontal), the slope of the individual treads (fifteen degrees inward), their wear and that of the skid-resistant paint on them, and the lack of a handrail.  Even if the situation is viewed as involving more than an isolated act that would not necessarily constitute unseaworthiness,[3] *i.e.*, the oil on the steps, Buisset has failed to carry his burden of proving by a preponderance of the evidence as required[4] that there even was oil on the steps, or that the steps

_____

[3]*See* Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 500 (1971); Weeks Marine Inc. v. Gillikin, 247 Va. 89, 92 (1994).

[4] Gosnell, 782 F.2d at 467 ("On the other hand, in order to prove a claim of unseaworthiness, a plaintiff must show that the unseaworthy condition of the vessel was the proximate or direct and substantial cause of the seaman's injuries.")  *See also* Alverez, 674 F.2d at 1042; Landry v. Oceanic Contractors, Inc., 731 F.2d 299, 302 (5th Cir. 1984); Comeaux v. T. L. James & Co., Inc., 702 F.2d 1023, 1024 (5th Cir. 1983).

were worn beyond an allowable tolerance, or that there was a need for a separate handrail while there were objects one could hold onto or grab in a very confined space, or that the pitch of the steps and their individual treads, either individually or in combination, created an unsafe condition rendering the vessel unseaworthy. More importantly, even if it were established that such conditions, either individually or in combination, rendered the vessel unseaworthy, the Claimant has failed to prove proximate causation as required.

Buisset's evidence as to whether there was oil on the steps is unpersuasive. Simply put, he has said different things at different times as to how he fell, first telling several individuals that he slipped on the cardboard at the bottom of the steps without any mention of oil, and then that he slipped on oil and was covered with the substance, which no one observed. The evidence concerning the degree of wear of the steps and the paint was also insufficient, Vulcan's evidence by both testimony and photograph as of the time of the incident being to the effect that any wear did not create an unsafe condition, while the Claimant's independent evidence to the contrary[5] was based on observation years after the event.

In regard to the pitch of the steps, the parties dispute whether the Occupational Safety and Health Administration (OSHA) regulation regarding ship's stairs even applies. Vulcan relies on a public pronouncement by OSHA that any stairs inclined, as those here, more than fifty degrees are not regulated, while the Claimant relies on an unofficial statement from an agency representative to the opposite view resulting in the proposed conclusion that the incline of the steps in violation of the applicable regulation rendered the CHANCE unseaworthy. *See* Vulcan's

---

[5]Though Buisset testified that the steps were "bare steel" as of the time of the incident, photographs taken the same day depict a different situation, as confirmed by Vulcan's witnesses, so as to preclude an affirmative finding in support of his assertion.

Propos'd Findings at 12 (citing authority); Claimant's Propos'd Findings Fact & Concl. Law

(Claimant's Propos'd Findings) at 8-10.  Although the commonsense resolution of the dispute is

that the regulation does not apply to stairs inclined more than fifty degrees because smaller

vessels like the CHANCE cannot comply due to space restrictions where stairs have to be

steeper, and that regulations were probably contemplated but never promulgated, any violation of

an OSHA standard does not necessarily establish unseaworthiness in any event.  Albrecht v.

Baltimore and Ohio R. R. Co., 808 F.2d 329, 332 (4th Cir. 1987).[6]  Here, there was insufficient

evidence that the pitch of the steps (or that of the individual treads) proximately caused Buisset's

fall, his own expert being understandably unable to conclude more than that the condition may

have had some unquantified affect.  *See* Vulcan Materials Company's Post-Trial Brief (Vulcan's

Post-Trial Br.) at 12-14 (citing evidence).  The same conclusion applies to the issue of the

handrails, namely, the Claimant failed to sustain his burden of proving that even if the lack of

sufficient handholds/railings rendered the CHANCE unseaworthy, such a condition proximately

caused him to slip and fall.

Finally, even though it is not necessary to reach the issue of Vulcan's alternative request

as provided for by statute for "limitation" of their potential liability, the court volunteers its

conclusion for possible review.  Although Vulcan sustained its burden of establishing that no

"managing agent" had actual knowledge of any unsafe condition aboard the CHANCE, including

any of those complained of by Buisset, clearly they should have.  In the Matter of Complaint:

---

[6]For the same reason, the court finds that the American Boat and Yacht Council's Standards and Recommended Practices for Small Craft as concerns the issues involving the stairs and hand railings do not constitute standards for which compliance precludes a finding of unseaworthiness.

Hellenic Inc., 252 F.3d 391, 394 (5th Cir. 2001) ("knowledge is judged by what the corporation's managing agents knew *or should have known* with respect to the conditions or actions likely to cause the loss.") (emphasis added); Empresa Lineas Maritimas Argentinas S.A. v. United States, 730 F.2d 153, 155 (4th Cir. 1984) ("The shipowner is chargeable with knowledge of acts or events or conditions of unseaworthiness that could have been discovered through reasonable diligence.") (citing cases).  Essentially, the import of Vulcan's position is "see no evil, hear no evil" by higher management as to safety concerns involving a forty-five year old, uninspected tug that looks from the photographs introduced into evidence like it was in obvious need of close attention.  While the Limitation Act, as anachronistic as it may be, is still in full force and effect as properly noted by Vulcan, such a position of blind ignorance is untenable, at least under the circumstances of this case.  *See* Vulcan's Post-Trial Br., n.5 (citing cases).

## CONCLUSION

The Claimant has failed to meet his burden of proving by a preponderance of the evidence that the CHANCE was unseaworthy for any or a combination of the reasons he claims and, more importantly, that such an unsafe condition or conditions proximately caused his injuries and resulting damages.  Vulcan's petition for exoneration must therefore be GRANTED and the case DISMISSED.

An appropriate Order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Dated:  12/21/05

-8-